THE STATE OF MISSOURI *ex rel.* D. S. LONG *et al.*, Relators, v. WILLIAM C. MARSHALL, Secretary Westport School District, Respondent.

### Kansas City Court of Appeals, March 19, 1892.

1. **School**: ANNEXATION OF CITY DISTRICT: STATUTE CONSTRUED. Section 8111, Revised Statutes, 1889, is intended to provide a way for the annexation of country districts, and not for the absorbing of one city district by another city district, and, therefore, Westport district cannot under said section be annexed to and form a part of the Kansas City district.

2. **Construction**: ABSURDITY. Statutes will be construed in the most beneficial way which their language will permit to prevent absurdity, hardship or injustice, to favor public convenience and to avoid all prejudice to public interest.

*Original proceeding by mandamus.*

WRIT DENIED.

*W. A. Alderson,* for relators.

*N. M. Allen,* for respondents.

GILL, J.—The relators are ten qualified voters of Westport, a city of the fourth class under the laws of Missouri, and seek by this proceeding to compel respondent Marshall, as secretary of the school district of Westport, to post notices for an election to determine whether or not said school district shall be annexed to the adjacent school district of Kansas City. Respondent waived the issuing an alternative writ, appeared and filed demurrer to the petition, thereby submitting to us the legal question whether or not, on the facts stated, relators are entitled to the relief prayed.

Here is the vital question: Under the school laws of Missouri, is there authority for the annexation of

the school district of Westport to that of Kansas City? The school laws of this state are found in the Revised Statutes of 1889 under chapter 143, and which is divided into four articles. The first article, in addition to some general provisions, relates to the government of country school districts; the second article provides specially for school districts of towns, villages and cities having less than one hundred thousand inhabitants—to which class Westport belongs; the third article has to do with school districts in cities of one hundred thousand and less than three hundred thousand inhabitants—which includes Kansas City; while the fourth article is particularly applicable to cities of over three hundred thousand inhabitants.

The contention that authority is given for the annexation of the Westport city school district to the Kansas City school district is based on section 8111 (R. S. 1889), found in article 3 aforesaid, and which article provides for the government of school districts of the class to which Kansas City belongs. Said section reads: "Whenever it may be deemed necessary to attach any school district, or part thereof, to any such city school district, then such school district shall proceed as directed in section 7972; and, should a majority of the votes cast be in favor of the proposition submitted, the school directors of such city school district shall have power, by a majority vote of their whole number, to receive the same and extend the boundaries of their district accordingly." The school district seeking annexation to the city school district, as provided under the foregoing section, is here remanded to section 7972 for the method to be adopted in bringing about such annexation. This section (7972) is found in that article which relates to the organization, etc., of *country school districts*, and the portion thereof necessary here to be quoted reads thus: "Section 7972. *Formation of new districts*. When it is deemed necessary to form a new district, composed of two or more entire districts,

or parts of two or more districts, or to divide one district to form two new districts from the territory therein, or to change the boundary lines of two or more districts, it shall be the duty of the district clerk of each district affected, upon the reception of a petition desiring such change, and signed by ten qualified voters residing in any district affected thereby, to post a notice of such desired change in at least five public places in each district interested fifteen days prior to the time of the annual meeting, and the voters when assembled shall decide such question by a majority vote of those who vote upon such proposition."

Now the decisive point is this: Did the lawmakers intend by this section 8111 to provide only for annexing an adjacent *country* district to the city district, or was it the design to open the way as well for the annexation of one *city* district to another city district? There can be no question that *country* districts are included in the words, "any school district or part therof," of the section; but was it the intention of the law to provide that one *city* district (organized under either article 2 or article 3) might in this manner become disincorporate as a school district and be swallowed up by an adjacent city district, organized under said article 3. We are of the opinion that no such move was contemplated by the legislature. The language of this section 8111 is somewhat ambiguous, it is true; but, when read and considered in the light of the statutes *in pari materia*, the conclusion seems quite irresistible that it was the intention to provide only for annexing the territory, or a part thereof, organized as a country district, under article 1 of the school law. Bearing in mind that the *mode of procedure*, so designated, is found in a section of article 1, which was meant alone for the guidance of country school districts, and it would seem that the legislative mind had in view only such country districts as are there provided for. We read section 8111 (which

provides for annexation of adjacent territory to the city district) as though the following portion of section 7972 (to which reference is had for the manner of procedure) was bodily incorporated in said section 8111, that is, "it shall be the duty of the district *clerk* of each district affected, upon the reception of a petition desiring such change and signed by ten qualified voters residing in any district affected thereby, to post a notice of such desired change in at least five public places in each district interested, fifteen days prior to the time of the annual meeting, and the voters when *assembled* shall decide such question by a majority vote of those who vote on such proposition." It is observed that it is here made the duty of the *clerk* of the school district to post notices, etc. There is no such office as "*clerk*" of the district of the class of school corpor-. ations to which Westport belongs. They have a *secretary*, not a clerk. R. S. 1889, sec. 8087. But *country* school districts are provided with a clerk. Sec. 7990. It is true that the duties to be performed by this officer are about the same, whether he be denominated a *clerk* or *secretary*. Yet their duties are not altogether identical, as will be seen by comparing the provisions in articles 1, 2 and 3 of the school law. I only refer to this designation of *clerk* in that portion of the statute thus providing the proceeding of annexation, as tending to show that the lawmakers had in view the annexation of adjacent *country* school districts rather than city districts.

Further, the voters of *country* school districts, once a year, at their annual meeting, *assemble* at two o'clock P. M., at the schoolhouse or other place, and when *assembled* decide the questions submitted to them. But the voters of a city district (such as Westport) do not assemble as an organized meeting, at two o'clock P. M. (as do country districts), but questions are submitted at elections held at the same time and place as the municipal elections of such city are held

The districts authorized to join themselves onto the city districts *assemble* at two P. M. on the first Tuesday in April of each year ( 7972, 7978 ), and these are country districts. City districts, such as Westport, may hold their elections at other dates, and must so hold if the population of such city exceed two thousand. Sec. 8096.

Again, if the relators' contention as to the construction of the words, "any school district," should be adopted by us, it would lead to most embarrassing, if not absurd, results. We are asked to hold that by "any school district," named in section 8111, is meant not only the adjacent *country* school district, but also that any *city* school district may be added to the territory of any adjacent city district. Now if this shall be the interpretation given section 8111 (providing for annexation to the Kansas City district), then a like construction must be given section 8097, providing for annexing territory to the city district of Westport. Let us suppose the positions of the two cities to be changed, and that the relators ( voters of Kansas City ) were asking *mandamus*, under the same circumstances as here, to compel proceedings looking to the annexing of the Kansas City school district to the Westport city district. Said section 8097 ( applicable to city school districts of the Westport class ) provides that "whenever an entire school district, or part of a district, adjoining any city, town or village school district, desires to be attached thereto for school purposes, upon the reception of a petition setting forth such fact, and signed by ten qualified voters of such district, the board of directors thereof shall order a special meeting for said purpose by posting notices," etc.,—the section going on to provide for adding territory if so decided, as in the other case. Now, if "*school district*" in 8111 includes *all* districts for school purposes ( city and country ), then "school district" in section 8097 likewise includes the same. If then that case was before

us, and we should construe the law as here insisted by the relators, we should hold that the Kansas City school district might be absorbed and taken into the Westport school district.    Under such an arrangement, then Kansas City's one hundred and fifty thousand inhabitants, with its thirty thousand voters, must, under the law, be merged into and become a part of the school district of Westport.    In such case the entire vote on school questions must be polled at the one or two voting precincts of Westport; for it must be remembered that the statute provides that the voters taken in by annexation shall exercise their suffrage at the ward precincts of the city to which the attachment is made.    Sec. 8096.

We think it our duty to avoid a construction leading to such absurd results.    " Statutes will be construed in the most beneficial way which their language will permit to prevent absurdity, hardship or injustice, to favor public convenience, and to avoid all prejudice to public interests."    Sutherland on Statutory Construction, sec. 324.

Construing this law then, taken as a whole, as is our duty (Suth. on Stat. Const., sec. 284), we hold it to be the intention of the statute to provide a way for the annexation of country districts to city districts, and not for absorbing of one city district by another city district.    The Westport school district then cannot, under the facts stated in the petition, become annexed to and form a part of the Kansas City school district.

The demurrer of the respondent Marshall will, therefore, be sustained.    The other judges concur.